UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| RAYBURN CONWAY, | ) | CASE NO. 1:16CV1724 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |

Plaintiff Rayburn Conway ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In his brief on the merits, filed on October 28, 2016, Plaintiff asks the Court to review whether the administrative law judge ("ALJ"): (1) violated the treating physician rule; and (2) erred in the weight assigned to the opinions of the state agency reviewing physicians. ECF Dkt. #15 at 13-23. On December 28, 2016, Defendant filed a response brief. ECF Dkt. #17. Plaintiff filed a reply brief on January 11, 2017. ECF Dkt. #18.

For the following reasons, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case for: (1) re-evaluation of the treating physician's opinion in compliance with the treating physician rule; and (2) sufficient explanation regarding the weight assigned to the opinions submitted by the state agency reviewing physicians.

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB in January 2014. ECF Dkt. #11 ("Tr.") at 174.[2] In the application, Plaintiff alleged disability beginning on September 17, 2012. *Id.* This claim was denied initially and upon reconsideration. *Id.* at 70-115. Following the denial, Plaintiff requested a hearing before an ALJ, which was held on September 29, 2015. *Id.* at 32. On November 17, 2015, the ALJ denied Plaintiff's application for DIB. *Id.* at 10. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Accordingly, the decision issued by the ALJ on November 17, 2015, stands as the final decision.

On July 6, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on October 28, 2016. ECF Dkt. #15. Defendant filed a response brief on December 28, 2016. ECF Dkt. #17. On January 11, 2017, Plaintiff filed a reply brief. ECF Dkt. #18.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In the decision issued on November 17, 2015, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. Tr. at 16. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; an anxiety disorder; and an affective disorder. *Id.* Next, the ALJ determined that, since the alleged disability onset date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 17.

After considering the record, the ALJ found that since the alleged onset date Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations: occasionally climbing ladders, ropes, and

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

scaffolds; occasionally stooping, kneeling, and crouching; never crawling; no work involving overhead reaching with either upper extremity or reaching in any direction with the right upper extremity; must avoid even moderate exposure to hazards (defined as industrial machinery, unprotected heights, or commercial driving); and the capacity to adapt to a work setting in which the duties were routine and predictable, and in which he could use a cane to ambulate. *Id.* at 17-18.

Next, the ALJ determined that Plaintiff had been unable to perform past relevant work since the alleged onset date. Tr. at 23. Continuing, the ALJ indicated that prior to the established disability onset date, Plaintiff was an individual closely approaching advanced age, and that his age category changed to an individual of advanced age on January 31, 2015. *Id.* The ALJ then stated that Plaintiff had at least a high school education and was able to communicate in English. *Id.* According to the ALJ, prior to January 31, 2015, the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled whether he had transferable job skills. *Id.* The ALJ then indicated that since January 31, 2015, Plaintiff had not been able to transfer job skills to other occupations. *Id.* After making these findings, the ALJ stated that prior to January 31, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id.* The ALJ then indicated that beginning on January 31, 2015, the date Plaintiff's age category changed, and considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that he could perform. *Id.* at 24. Based on these reasons, the ALJ determined that Plaintiff was not disabled prior to January 31, 2015, but became disabled on that date and continued to be disabled through the date of the decision. *Id.*

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's

denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

## V. ANALYSIS

### A. Treating Physician Rule

Plaintiff first asserts that the ALJ failed to provide good reasons for the weight assigned to the opinion of his treating specialist, Jerold P. Gurley, M.D. ECF Dkt. #15 at 13. Specifically, Plaintiff claims that the ALJ failed to recognize the nature and extent of the treatment relationship with Dr. Gurley and failed to recognize the he was a treating source. *Id.* at 19. For these reasons, according to Plaintiff, the ALJ failed to provide good reasons for the treatment of Dr. Gurley's opinion and this failure constitutes a violation of the treating physician rule. *Id.* An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's

application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

When discussing his treatment with Dr. Gurley, Plaintiff indicates that in August 2013, almost twelve months after an accident in which he was ejected from the cab of a semi-trailer truck, Dr. Gurley noted that his progress was slow and steady following a two-level cervical fusion performed in January 2013. ECF Dkt. #15 at 13 (citing Tr. at 384-85, 645). Plaintiff then states that Dr. Gurley ordered a Functional Capacity Evaluation ("FCE") in September 2013. *Id.* (citing Tr. at 815-16). Continuing, Plaintiff explains that the FCE was performed by Kurt Zillmann, a physical therapist, on November 19, 2013, and that the FCE was signed by Mr. Zillmann, and later Dr. Gurley. *Id.* at 14 (citing Tr. at 575-81, 585). Plaintiff then indicates that in Dr. Gurley completed a Medical Source Statement ("MSS") in May 2014 reporting that

-6-

Plaintiff was unable to work. *Id.* Regarding the MSS, Plaintiff states that Dr. Gurley referred to, and attached a copy of, the November 2013 FCE. *Id.* (citing Tr. at 870-71).

Plaintiff then indicates that the ALJ rejected the FCE because: it was unclear whether Dr. Gurley or Mr. Zillmann prepared the FCE; the conclusions were "not consistent with the objective evidence and later evidence of the [Plaintiff's] considerable improvement with therapy and medication"; and there was no evidence that Mr. Zillmann was a treating source. ECF Dkt. #15 at 15. Continuing, Plaintiff notes that the ALJ stated that Dr. Gurley co-signed the FCE, but also that his level of involvement was unknown. *Id.* Plaintiff also states that the ALJ found that Dr. Gurley's conclusion that Plaintiff was unable to work was based on Mr. Zillmann's evaluation rather than "function-by-function statements," and that Mr. Zillmann was a non-acceptable source. *Id.* Further, Plaintiff indicates that the ALJ stated that Dr. Gurley provided very little independent analysis or findings of his own. *Id.*

After discussing the ALJ's treatment of Dr. Gurley's opinion, Plaintiff asserts that the ALJ failed to identify Dr. Gurley as a treating physician. ECF Dkt. #15 at 16. Plaintiff also avers that although the ALJ discussed some of the examinations performed by Dr. Gurley, she failed to identify Dr. Gurley as the physician who performed the examinations, instead referring to the examinations generally. *Id.* at 16-17. Further, Plaintiff claims that the ALJ failed to note that Dr. Gurley had seen him at least ten times in the ten months prior to the FCE, including a visit for surgical intervention. *Id.* at 17. Plaintiff states that Dr. Gurley ordered the FCE to determine his physical demand capacity based on standardized testing and in order to make further treatment recommendations. *Id.*

Additionally, Plaintiff asserts that the ALJ failed to recognize Dr. Gurley's specialization as an orthopedic surgeon, and thus failed to consider this factor when determining whether his opinion deserved significant weight. ECF Dkt. #15 at 19 (citing 20 C.F.R. § 404.1527(c). Continuing, Plaintiff avers that the ALJ's claim that there was subsequent improvement in Plaintiff's condition, based on the November 2013 evaluation, does not mend her errors in the evaluation of Dr. Gurley's opinion, especially since Plaintiff met the duration requirements at the time of that evaluation. *Id.* Further, Plaintiff argues that the record did not show sustained

improvement that would have allowed him to perform the functional requirements identified by the ALJ, and that the selective review of the record caused the ALJ's understanding of his improvement to be flawed. *Id.* at 19-20. Finally, Plaintiff asserts that the ALJ's analysis of his pain and other symptoms does not mend the errors in the analysis of Dr. Gurley's treating-source opinion, noting that the ALJ claimed that his condition improved despite failing to cite to the record to support the determination. *Id.* at 20.

Defendant recognizes that an opinion from a treating source would generally receive greater deference, but states that such an opinion is entitled to controlling weight only if it is well supported by acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record. ECF Dkt. #17 at 10. Continuing, Defendant asserts that Dr. Gurley did not provide an explanation or medical support for his conclusion that Plaintiff was unable to work, and instead merely referenced the FCE of a non-treating physical therapist. *Id.* at 11. Defendant also states that Mr. Zillmann's findings were inconsistent with evidence of Plaintiff's improvements following cervical fusion and physical therapy. *Id.* at 12. Regarding Dr. Gurley's statement that Plaintiff was unable to work, Defendant asserts that this statement lacks probative value since this legal determination is reserved to the Commissioner. *Id.* Finally, Defendant argues that the absence of the phrase "treating physician" from the ALJ's decision does not equate to a failure to recognize Dr. Gurley as a treating medical source, and that the ALJ's rationale for discounting Dr. Gurley's opinion remains valid as the opinion must be weighed with consideration given to the explanation and medical evidence supporting the opinion. *Id.* at 13.

Defendant's arguments are without merit. When discussing Plaintiff's RFC, the ALJ briefly mentioned some of Dr. Gurley's treatment notes, however, the ALJ did not identify Dr. Gurley as the physician who performed the examinations or make any mention of the lengthy treating relationship between Plaintiff and Dr. Gurley. *See* Tr. at 19. The record shows that Plaintiff visited Dr. Gurley at least eleven times from late 2012 through early 2015. Tr. at 811-45, 1064-67. The ALJ first mentioned Dr. Gurley by name when addressing the FCE and stated, in part:

> This [FCE] was also signed by one of [Plaintiff's] doctors, Jerold Gurley, M.D. While [Plaintiff] was run through a battery of tests as part of this exam, it is unclear if Mr. Zillmann or Dr. Gurley conducted the tests and interpreted the results. Mr. Zillmann is not an acceptable medical source and his conclusions are not consistent with the objective evidence and later evidence of [Plaintiff's] considerable improvement with therapy and medication.

*Id.* at 22. Continuing, the ALJ stated that the FCE "appeared to be an understatement of [Plaintiff's] abilities based on a [sic] one clinical performance and it fails to account for [Plaintiff's] subsequent improvement." *Id.* The ALJ did not provide citations or an explanation of how the FCE was not consistent with the objective evidence or later evidence of Plaintiff's improvement, or how the FCE appeared to understate Plaintiff's abilities. *See* Tr. at 22.

Regarding the opinion of Dr. Gurley, the ALJ takes issue with the fact that the MSS relied heavily on the FCE. *See* Tr. at 22. The ALJ stated that Mr. Zillmann was not an acceptable medical source and that the level of Dr. Gurley's involvement in the FCE was unknown. *Id.* The MSS submitted by Dr. Gurley did rely heavily on the FCE, indicating that the Social Security Administration ("SSA") should "[r]efer to the detailed FCE" in the portion of the form where the individual issuing the opinion is asked to identify the clinical findings, laboratory results, and test results that show the claimant's medical impairments. *Id.* at 870. In the MSS, it was indicated that Dr. Gurley did not complete the physical capabilities portion of the MSS, instead referring the SSA to the FCE, which contained the information pertinent to the questions asked in the MSS. *Id.* at 872-873.

Despite the ALJ's concerns regarding the FCE, the evaluation was signed by Dr. Gurley under an authorization reading, "I certify that the above Functional Capacities are acceptable with any changes indicated." Tr. at 881. The ALJ stated that it did not appear that Dr. Gurley rendered a function-by-function statement and relied on a non-acceptable medical source.[3] *Id.* at 22. However, Dr. Gurley met with Plaintiff numerous times prior to the FCE, and then signed the FCE and indicated that the FCE presented an accurate picture of Plaintiff's functional

---

[3]It should be noted that although Mr. Zillmann is not a source who can provide evidence to establish an impairment under 20 C.F.R. § 404.1513(a), 20 C.F.R. § 404.1513(d) includes therapists as a source that the SSA may use for evidence regarding the severity of a claimant's impairments.

-9-

capacities.  *See* Tr. at 813-26, 881.  In fact, the copy of the MSS filed as Exhibit 24F indicates that Dr. Gurley signed the FCE on January 3, 2014.  *Id.* at 881.  Dr. Gurley met with Plaintiff on the same day he signed the FCE and endorsed the functional capacities presented therein.  *Id.* at 813-14, 881.  Dr. Gurley had a treating relationship with Plaintiff and signed the FCE indicating that the findings of Mr. Zillmann accurately portrayed Plaintiff's functional capacities, and then incorporated the FCE into the MSS submitted to the SSA.  The opinion submitted by Dr. Gurley was the opinion of a treating physician, and the ALJ was required to address it accordingly.

Beyond the concerns regarding the preparation of the FCE and the MSS, the ALJ also found that the FCE appeared to be an understatement of Plaintiff's abilities.  Tr. at 22.  However, the ALJ failed to support this finding with an explanation or citations to evidence demonstrating that Plaintiff's abilities exceeded the limitations contained in the FCE.  *See id.*  Additionally, the ALJ stated that the FCE failed to account for Plaintiff's subsequent improvement.  *Id.*  No evidence or explanation for this finding is presented in the decision.  *See id.*  In fact, Plaintiff reported to Dr. Gurley that he was experiencing significant pain on several occasions after the preparation of the FCE.  *Id.* at 811-14, 1064-65.  The ALJ also stated that Dr. Gurley indicated that Plaintiff was unable to work, but that this determination was reserved for the Commissioner.  *Id.* at 22.  Plaintiff does not contend that Defendant was bound by Dr. Gurley's opinion that he was unable to work, but rather that the ALJ was bound by the requirements of the treating physician rule.  ECF Dkt. #15 at 16.

The Court agrees with Plaintiff that the ALJ violated the treating physician rule.  While Defendant is correct in asserting that the ALJ was not required to expressly refer to Dr. Gurley as a treating physician, it is unclear from the decision whether the ALJ recognized Plaintiff's treatment history with Dr. Gurley.  The ALJ devoted little discussion to Dr. Gurley's opinion, and spent the majority of that discussion attempting to discredit the opinion on the basis of how it was prepared, rather than the findings contained therein relating to Plaintiff's physical limitations.  Further, the additional reasons offered by Defendant for discrediting Dr. Gurley's opinion were presented in a perfunctory manner, devoid of explanations or citations.  As such, the ALJ has failed to provide "good reasons" for discounting Dr. Gurley's opinion.  *See Wilson*,

378 F.3d at 544. On remand, the ALJ must comply with the treating physician rule, and, if it is found that Dr. Gurley's opinion should be assigned less than controlling weight, "good reasons" must be provided to support such a finding.

### B. State Agency Opinions

Plaintiff also asserts that the ALJ's analysis of the opinions submitted by the state agency reviewing physicians lacked the specificity required for meaningful appellate review and did not mend the failure to properly analyze the treating physician's opinion. ECF Dkt. #15 at 22. Specifically, Plaintiff asserts that the ALJ did not cite to any evidence when finding that the state agency reviewing physicians' opinions were "supported by the objective evidence and other persuasive evidence." *Id.* (quoting Tr. at 21). Plaintiff also takes issue with the ALJ's indication that these physicians were "state agency examiners," despite the fact that they actually issued opinions after reviewing the record, rather than examining Plaintiff. *Id.* at 22-23.

Defendant contends that when the treating physician's opinion was contrary to the record as a whole, lacked medical support, and failed to include specific work limitations, an ALJ may properly assign greater weight to the opinions submitted by state agency physicians. ECF Dkt. #17 at 14 (citing 20 C.F.R. § 404.1527). Additionally, Defendant asserts that the ALJ's error in categorizing the state agency physicians as examining physicians was harmless, and that their opinions deserved greater weight because the opinions were consistent with the objective medical records and Plaintiff's physical improvement. *Id.* at 14-15.

The ALJ's treatment of the opinions submitted by the state agency reviewing physicians suffers from similar defects as the treatment of Dr. Gurley's opinion. After summarizing the findings of the state agency reviewing physicians, the ALJ assigned the opinions great weight and stated:

> [The opinions] are supported by the objective evidence and other persuasive opinion evidence. While evidence received at the hearing level was considered, these records show [Plaintiff] was improving both physically and mentally with therapy and medication.

Tr. at 21. No further explanation was offered by the ALJ, and there were no citations provided to make clear what evidence the ALJ actually considered when making this determination. The lack of explanation on behalf of the ALJ, coupled with the fact that it is unclear whether the ALJ knew the state agency physicians did not examine Plaintiff, warrants further explanation from the ALJ regarding the weight assigned to these opinions. On remand, the ALJ must address the opinions submitted by the state agency physicians in compliance with all rules and regulations issued by the SSA, including, but not limited to, 20 C.F.R. § 404.1527.

## VI. CONCLUSION

For the reasons stated above, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case for: (1) re-evaluation of the treating physician's opinion in compliance with the treating physician rule; and (2) sufficient explanation regarding the weight assigned to the opinions submitted by the state agency reviewing physicians.

Date: August 21, 2017    */s/George J. Limbert*
                         GEORGE J. LIMBERT
                         UNITED STATES MAGISTRATE JUDGE